314-0883, People of the State of Illinois, Allen v. 2009 Chevrolet and Jeffery Burton, Appalachia v. Allen Bruckman Mr. Gennadievic Good morning, Your Honor. Thank you, Mr. Court, Counsel. This is a State Appeal from a denial of a petition for forfeiture. And basically, this case was brought pursuant to two complaints for forfeiture. One was based on the charge of vehicle theft conspiracy, to which the claimant, Mr. Burton, had pleaded guilty in a prior trial. It was also brought under the Money Laundering Act. The evidence in this case is... Can I stop you right there? Right there. So, which one are you proceeding under for purposes of appeal? In this particular case, we're going to be proceeding under the vehicle theft conspiracy. Which is the earlier forfeiture and the Money Laundering Act. Right. So you're just conceding that... Well, not really conceding... Okay, I just wanted to get the perspective, because the trial court didn't help you out here. You've had a couple of these cases this fall. The trial court didn't really help you out. There were two pleadings, and he... Two pleadings and no ruling, no factual findings at all, just an outright denial. So for purposes of this appeal, we could forget the money laundering? Well, the money laundering comes into play because under that particular statute, and I think the facts lead to a conclusion on either petition. On either one, actually. I want you to pick one. Tell me, you're picking one or you're agreeing both should have been allowed? Because we have to focus in on the issue. I think that both should have been allowed. This forfeiture could have been allowed under either one and or both. Okay. So can you help me out by addressing them one at a time? But did you appeal both? Yes. You appealed both? Yes. But there was no ruling on one? There was no ruling on any of them. Because the way the final hearing came out, well, it says there was a ruling. The ruling simply said, I think it's something along the lines of the state's petition for forfeiture denied. That was the ruling. And that's what we appealed. The trial judge gave no findings, made no findings. He took the matter under advisement. Yeah. And for a couple months. And then said. And just denied it. Took the bench, denied it. But he has not retired. Right. Right. So I don't know if that has something to do with the timing of the announcement or not. But what I would like to take and do if I could, is I would like to take and go through the facts a little bit. Simply because I think factually they would tend to establish both, I think. What we basically have is we have the state's case primarily consistent of a number of exhibits that were admitted. Guilty plea hearing, plea of guilty, some prior testimony by one of the individuals. And then at the hearing, the state called Dwayne Killian, a police officer. He testified, and they got a tip on this. He testified that they watched two individuals steal some equipment from Lucas Paving. The drivers, as they exited, they went under state 80. They drove a distance. The individual that was driving the Yukon went into the dump truck that was used to take and steal the equipment. The individuals from the equipment went into the Yukon. In any event, the stolen equipment was eventually driven to a parking lot laundromat in Braywood. There, shortly after its arrival, a black Chevy pulled into the laundromat parking lot. A male exited, and Killian identified the claimant, Mr. Burton, as that individual. Also, the vehicle that pulled up was a black Chevy. Killian testified it was the vehicle that was impounded. The claimant exited his Chevy, walked up to the equipment, conversed with a Zachary Campbell, eventually entered the bucket of the skid steer, investigated or kind of checked over the equipment, and basically then got out of the skid steer, walked back to his truck, exited with Campbell following. They drove a short distance. They turned on Vernon Road until the claimant parked his car in William Perry's driveway. Zachary Campbell, who had been following, ended up parking the stolen equipment right behind Perry's driveway. Killian and the others approached the claimant because the police, shortly after Zachary Campbell arrived, the police arrived, they arrested Campbell, claimant, and William Perry had been in the backyard and walking toward the street, they were also arrested. Killian also testified, learning from Officer Sloop, that Sloop had learned from Perry that claimant had called him earlier, wanting to know where the easement on Perry's property was, in an effort to take in, because he said something about the fact of having to park some construction equipment on it. So that was pretty much Officer Killian's testimony. Along with the documentary evidence that was submitted to the exhibits, the state rested. Trial judge denied a motion for a directed verdict. Claimant put on his case. The individual called as part of the claimant's case was Zachary Campbell. He had testified earlier at the defendant's trial, which by the way, the defendant pleaded guilty mid-trial to the vehicle theft conspiracy. In any event, Campbell testified similar to his trial testimony as follows. A couple weeks before September 21st of 2010, he got a call from a Ronnie Talmadge. By the way, there's a footnote in my brief. Talmadge is deceased. He had been killed in a car accident prior to all of this coming to trial. He received information about some construction equipment, so the week before September 21st, Campbell testified that he received a call from Jeffrey Burton, who was looking for a skid steer for a friend. Their discussion according to Campbell was that the skid steer was to be hot or stolen equipment. Campbell contacted Talmadge, telling him he had a buyer. Talmadge drove Campbell past the target, which was Lucas Paving. A plan was formulated to steal the equipment, with Talmadge picking the date of September 21st of 2010. Between the time that Talmadge drove Campbell past Lucas Paving and the September 21st target date, Campbell testified that he had several telephone conversations with the claimant, who had inquired about some of the hours on the skid steer, as well as whether or not it was in good shape, and the brand name, etc. On September 21st at around 4 a.m., Campbell and his SUV drove two individuals, Dennis and Sam, who basically entered the premises that had been left unlocked. Shortly thereafter, they pulled away in a dump truck with a trailer that had a skid steer and a rover on it. Campbell called the claimant, letting him know that he had the skid steer. The claimant told Campbell to basically head to Braidwood, and when he got close to there, to give him a call. Campbell testified that that's exactly what he did. The claimant said to meet him at the Braidwood laundromat. In the process, Campbell testified that he dropped Dennis and Sam off at Snooker's Bar, which was consistent with what Killian had testified. At around 8 p.m., the claimant approached after being informed that the claimant had driven to the laundromat and basically was there to take and meet the claimant. The claimant approached and talked to Campbell in close proximity to the equipment. The claimant stated that he only wanted the skid steer. Basically, he and Campbell inspected the equipment, checked on the hours. After doing that, the claimant made a call. Dennis told Campbell to follow him, that where they were going was not far. Approximately 10 minutes later, they stopped at what ended up being William Perry's residence. The claimant went to the home, basically Campbell parked the vehicle at the driveway, and shortly thereafter, he was arrested after the police arrived. Based on these facts, and the claimant testified, mostly the claimant's testimony was simply denying everything that Campbell had testified to, as well as the fact that he tried explaining why he pleaded guilty. And so, that was the sum and substance of the evidence that was deduced. So what we have is, we have evidence that shows that there was a conspiracy, basically, to steal these vehicles, to steal this equipment from Lucas Peyton. We have the unimpeached testimony of Campbell, and it's corroborated, at least as far as the movement of everything, by the officer. Well, there's conflicting testimony. Campbell's saying one thing, the claimant's saying the other. Campbell's saying one thing, and basically denying... So, what inference do you draw from the fact that trial judge denied... Simply denied? Yeah, did he believe Campbell? I don't know. If you don't believe Campbell, you're going to deny the motion. You're going to deny the forfeiture. Well, true, except for the state's case that was put on, the case in chief, with Killian and everything, passed the standard for basically establishing everything that was needed, to get by a directed verdict. But then you... The...Burton testified. Now, he already pleaded guilty. True. Look, I pleaded guilty because the cops and the prosecutors said they really lowered the boom on me. Now, I don't know if that's the most credible testimony in the world, but if the judge, to try or fact, believed it, they also said, no, I didn't know that guy was following me and all that stuff, pretty wild story, but if the judge bought it, that would be the basis for denying the... Except for the fact that, and one of the reasons the things under the Money Laundering Act, defendant is precluded from explaining away his guilty plea. If he pleads guilty, he's found guilty, he can't take and explain that away. In essence, what the defendant was trying to do is, at least as I see it from the criminal side, he's trying to take and withdraw his guilty plea in the forfeiture hearing. That's what he's trying to do. And the Money Laundering Act precludes him from doing that. You can't say, well, I pleaded guilty because they're going to lower the boom on me, they're going to take my wife's car, they're going to take my house, they're going to throw a book at me. You can't do that. Why can't you do that? The statute prohibits it. From ever saying anything while you pled guilty? Let's see if I've got it here. Under 720 ILCS 5-29B-1L9, claimant is statutorily precluded from refuting, denying, or explaining whether he actually committed the criminal offense of which he was convicted. The statute precludes him from refuting, denying, or explaining whether he actually committed the criminal offense of which he was convicted. In a forfeiture then? Yes. And did the state then object to that? Yes. And the trial judge let it in. So that's what we're stuck with. So in the grand scheme, we think that the totality of the evidence here shows the opposite conclusion. Basically, we think we have shown by preponderance of the evidence that it's more likely than not that this event occurred, that what happened here basically was sufficient enough to establish forfeiture. If you take a look at People v. Adams, which is a Second District case, which relied upon hand-to-hand versus 1965 Oldsmobile, in Adams, defendant drove his truck to a gas station, walked into the gas station, stole some receipts, different things that had credit card numbers on, exited, got in his truck, left. Used his credit cards to do something online or whatever, whatever they do, and eventually he was caught on surveillance from the gas station. His vehicle was seized, and his vehicle was subject to a forfeiture proceeding. The appellate court affirmed simply saying that the fact that the defendant drove his truck to the gas station to commit the burglary and then used it to leave was sufficient to show that the truck was used in the commission of the crime. That was the whole issue. Thank you. That was the whole issue. That was sufficient. Basically, this case was pretty much identical. He drove to an area where the stolen equipment was, he inspected the equipment to make sure that it was what he needed, what he wanted, what he could take and get and sell, used his truck in the commission of the vehicle theft conspiracy. Or, in terms of the money laundering, to basically show that here that the stolen vehicles were criminally derived property. Organizing of the sale of the stolen vehicle equipment was an attempt, basically, of a financial transaction that would somehow, in some way, conceal the nature of the stolen property. So under either petition, we think the evidence establishes, by a preponderance of the evidence, that there is a basis here to forfeit this vehicle and that the trial judge's decision is against the manifestly of the evidence. Okay, but let's talk about how forfeiture hearings are conducted. The state has the initial burden to show by a preponderance of the evidence that forfeiture is a crime. And, again, the trial judge did an outstanding job of saying, I rule in the state's favor on the probable cause of preponderance. The motion for directive finding denied. No findings. So you infer in your brief that the court found the state met its burden on both petitions. Then the burden shifts to the defendant, am I not correct, or the claimant, to show an exemption or to show something. And they have a cross-appeal, the initial finding. So we're stuck with that initial finding that seems to me was snatched out of thin air. But, nonetheless, it shifted the burden to them to show that there was a reason forfeiture shouldn't occur. So how did they? They didn't. We don't know what the court's findings are. How can we review? This is not de novo review. We're reviewing findings for the manifest way to the evidence. With no findings. With no findings. So should we just remand for new hearings and findings? Judge Kinney isn't there any longer. I mean, I don't know how we remedy the lack of findings. And I'm looking for help, and I'll be asking the same question on the other side. Who gets the benefit of the doubt of no findings? That's a good question. All right. I wish I had a crystal ball to give an answer. Let me ask you this. In a jury trial, if somebody is found guilty or not guilty, how many findings of fact does the jury enter in that verdict? Just guilty. Based on what the elements are. And then what the court does is the court then reviews all of the facts against the law to determine reasonable doubt. So the answer to my question is zero, right? That would be correct. And so we review cases based on manifest way to the evidence every day without findings of fact going. Below. No. Simple cases. Simple cases. I think that... In a criminal case, the defendant doesn't have a burden of proof. It's different. We can debate that later. The thing is, I think what... In thinking about your question here for 30 seconds, I think that what can happen is, I think that what can be done is, even if we look at the fact of what the evidence that the defendant did present, and even, I guess, if one would have to necessarily assume on a silent record that the trial judge made certain findings of fact, obviously favorable to the defendant. But now what you have to do is you have to take a look at whether or not that decision, based on those facts, is against the manifest way of the evidence. And what you would have to have to take and do is, because of what was alleged here, what was alleged as the basis of the forfeiture petition, as well as the various standards, as well as the exclusion of the testimony with respect to the explanation for pleading guilty, is out. Now, in doing this, is the trial judge's determination contrary to the manifest way of the evidence? In other words, is the opposite result clearly evident or indisputable? If you didn't believe Campbell, you exclude the claimant's testimony. If the judge didn't believe Campbell... You still have Killian's testimony, and you still have all the other evidence, plus the guilty plea. What do you say, how was the truck utilized, based on that case you have? His truck was utilized just like the guy who drove to the Burbank. He drove to the location where the stolen property was, inspected the stolen property, and then to the place where the entire attempt to steal the store. Any other questions? Thank you. Mr. Bergman? Good morning. May I please support the counsel? I'd like to answer that question you asked of my opposing counsel. I think, A, the fact that the state didn't adequately preserve the record goes against them on this appeal, and I think that the state... What do you mean they didn't adequately preserve the record? The record is very incomplete of the hearing in forfeiture. There was not a recording made, there wasn't a court reporter... Isn't there an agreed statement of facts? Judge, I agreed to... No, there wasn't. There was an agreement to submit certain statements of what people testified to without admitting their credibility, because, in fact, part of Campbell's testimony wasn't. So, you know, my criticism, and I think you've picked up on this, is I don't think Campbell is credible in any way whatsoever, and I think Judge Kinney... But there is a record. ...concluded that. I said incomplete. The record is incomplete, and if the finding of facts is incomplete, that both is against the state, because they're the ones that lost, and they're the ones that preserved the appeal. Well, we have a transcript of the trial court's announcement. Yes. We just don't have audio, because the audio portion wasn't... There was audio, and the audio pulled off on one day. Of the trial court's announcement on the directed finding and the trial court's announcement after he had the case under advisement that were just, you win. Right. I've read the decision. I'm aware of that. In your brief, you argue that the first petition for forfeiture was incorrect, and that's, I think, the 2010 petition based on the conspiracy. Do you want to address that? Yes, I will, Judge. May I suggest, too, that I think the state has waived the money laundering statute. They haven't in their arguments at all raised how he was guilty of money laundering, and so I think they've waived that. And then they ask you to rely on a statute about the plea that's the money laundering statute, not the criminal conspiracy to commit a theft of an auto. So they're asking you, they've waived their one argument on the money laundering, but yet they want you to use that statute and apply it to the criminal conspiracy theft of the auto, which it does not apply. But I'd also like to point out one area before I go to where you want, and that is they talk about the judge's previous findings that the people satisfied the burden of proof. I think if you, I don't think that's an accurate statement of the law, and I don't think that's an accurate statement of what the trial court did. That's on page 6 of the state screen. Was there a motion for directed verdict at the end of the state's case? Yes. Did the judge deny it? But that's based on the evidence, yes. But that's taken on the evidence, well, in the trial court on the criminal case, no, the judge never reached that. But on this forfeiture case? In the forfeiture case, the judge, but remember, on directed finding, it's taking all the evidence he's heard and the light most favorable to the plaintiff. I know all that. So my question is, was there a motion for directed verdict at the close of the state's case on the forfeiture? Yes, Your Honor. And did the trial judge deny it? Yes. But I think that doesn't mean anything other than he then addressed the credibility of the witness, and the primary witness being Campbell, then found that there wasn't sufficient evidence for forfeiture because I believe he didn't believe Campbell. Whoa, whoa, whoa. He addressed the credibility of Campbell. Who did? Judge Kinney. In the forfeiture proceeding? In the decision to deny the forfeiture. And even in the evidence that was presented of a police officer, Killian testified that he was parked hundreds of yards away behind buildings and across streets and on the other side of railroad tracks when he supposedly witnessed what happened by the laundromat. Now, he didn't hear anything, he didn't see anything. He did testify that no money changed hands, but what I want to address on the facts on the criminal conspiracy to commit theft of the vehicle, remember, and somebody already asked the question about when did that theft occur, that theft occurred after Talmadge, and Talmadge didn't die soon after the criminal conspiracy. Talmadge died years later before the forfeiture hearing. So they had plenty of time to arrest him, to charge him, to interview him. They never did. The state never did. And they gave sweetheart deals to everybody that testified against Burton in anything, and that was clearly made evident in the trial of the forfeiture case. I think counsel also might be suggesting you a little bit different. The guy that gets his car forfeiture because he drives to the store, steals the evidence or information so he can use it to commit theft by the internet from credit card receipts, that was, he couldn't have got those if he hadn't driven there and driven home. In our case, our client drives to a laundromat to speak to somebody that called him, and then he drives to a friend's house to pick him up to go to a bar. That's what the testimony was. Nobody refuted that until they took Perry into custody, locked him up overnight, threatened him with a perjury complaint, filed a perjury complaint against him, and so he changed his testimony. But at the trial, in the criminal case, you got a guy committed perjury, changing his testimony several times to get a deal on the perjury case. Nobody made a finding of the credibility of the witnesses at the trial in the criminal case because of what happened. And I would suggest to you what happened is they really did blackmail my client in the middle of the trial when he's, the judge in the trial court had taken the directive finding decision under advisement, and then the case proceeded, and then the plea. And the plea was for two years probation and no jail time. And the guy's wife was expecting a baby, you know, simultaneous with the plea, so he fled to get out of going to jail. And that's what was presented to Judge Kinney. And so Judge Kinney considered that. Again, you got two cases going on at the same time, and the state's arguing you can't use that, you can't use that, and the judge decided you could use it because he's got two cases, one a forfeiture for money laundering, and maybe that law says that. I really dispute the law really says that, even in the money laundering case. But certainly, in this case, he's charged with a theft by agreeing, apparently, to buy some stolen equipment. And the only witness that says that is Campbell. Even Talmadge, and everybody says Talmadge, called Campbell. Go steal this equipment from Lucas Payton. Steal it on the 21st. Hire Salem and Turner to go do it. The police stake out that location, and at night, Campbell, Salem, and Turner go there and steal the equipment. And then they get on the expressway, driving towards Braidwood from the very get-go. When they left there, they got on 80, went on 55, and they're heading towards Braidwood. So my client hadn't done anything at this point. And according to Campbell, Talmadge told him, steal this equipment and find somebody to buy it. It wasn't like Talmadge told him, and I got this buddy Burton that's going to buy it. That didn't happen. Supposedly, by total coincidence, the day that Talmadge calls and says, steal all this stuff, Burton calls Campbell and says, I'd like to buy a stolen skidster. Who would do that? Especially, putting evidence at the forfeiture hearing, that skidster as a stolen piece of equipment wasn't worth anything because he would not be able to get it with a serial number serviced. And they have a high incidence of breakdowns, and you need to have them serviced. And he wouldn't be able to get a stolen one serviced. So that's why, if he was asking about buying it, how many hours were on it, who's the manufacturer, and they never agreed to a price. And then for the state to say, and Burton leads the way to Perry's house, Burton is planning to go to Perry's house, and he leads Campbell, how does he know Campbell follows him? This is a rural area, they drive around roads, Campbell could have been going anywhere. And he doesn't park, and counsel made a mistake when he was talking about these facts, Campbell doesn't park behind Perry's driveway, he parks on the street over on the side. And there was testimony that it would be the dumbest place, by Perry, it would be the dumbest place in the world to park stolen equipment, because the mayor lived right there, and there was nothing to obstruct the view from the mayor's house of anything that was on Perry's property. So there are a lot of things for Judge Kinney to rule on, to decide that this forfeiture shouldn't go forward, and the forfeiture should be denied, and that's what he did. You asked the question, Judge, and I probably didn't answer it as directly as you would like. You didn't, because in your brief you say, well it's obvious that the first forfeiture complaint was in error, and that is the theft complaint. And I did a motion to dismiss that, I'm not sure if it was dismissed, but then they filed an amended complaint. Why was it defective, to begin with? They had a criminal conspiracy to steal this equipment that my client was not involved in. That's Talmadge and Campbell discussing stealing equipment from Lucas. They had an inside person that left the gate open. Okay. All those people involved in... I just want to get into the procedural background. So do you think there are two petitions, or are you calling the first petition in the 11MR case the amended petition? No, there are two petitions. One was under the Money Laundering Act, and one was under the Auto Theft Conspiracy Act, or the act that alleged the auto theft criminal conspiracy. And that's the one they amended, but it wasn't that they filed the second one. They filed two. They don't have to post a 10% bond on every one they file. Well, my client has to post a 10% bond on every one they file. He has to file a bond twice to get the same vehicle back. They don't care. Why did the judge just allow a motion for directed finding? Was the motion for directed finding only on one of the petitions, or did the judge not realize he was considering two? I think Judge Kinney realized he was considering two. Okay. I think Judge Kinney realized that the standard for granting the directed finding is the evidence taken most favorable to the state. And I have to concede that I think Judge Kinney was right. There was evidence by Campbell. Okay. All right. And then it becomes your burden. Yeah. And who did you put? I don't think it necessarily becomes my burden, because even if I presented no evidence, the judge then, after not finding a directed finding, could still dismiss the forfeiture saying, now that I can weigh the evidence, these guys are uncredible, I find that their testimony fails. He didn't say that, though. He didn't have to. He said, do not. Forfeiture is dismissed. And as someone suggested, you get cases like that all the time. Judge Schmidt. Judge Schmidt. Thank you, Judge. You suggested it. You get cases like that all the time. And as a trial attorney, if I think I need it, I ask the judge, will you tell me the basis for your ruling? Or if it's a jury trial, submit special interrogatories and ask them, is this part of your decision? Is that part of your decision? That's my job. If I want to win. If I don't do it, I can't raise it later. But I think, I guess to conclude. What was your authority for what he just said? Which? What's the authority that says, you know, once he makes a ruling, this, you know, relief granted or denied, that you're going to then depose the trial judge and say, well, what exactly were your findings, Judge? Judge, I've filed motions and asked for findings on a number of cases, and judges routinely give them to me. And I think it's permitted by the civil practice. The question is, where is it required? In other words. Well, I don't think it's required. When we look at these cases often, more than not, you've got a finding. Right. So this civil case, jury finds, let's say, a civil case for the plaintiff or the defendant, they have the other side of the appeal, so I should say it's against the manifest way of the evidence. Well, what did the jury believe or disbelieve? Oh, we don't know. But you look at it, and you say, could any reason, you know, is the absent clue, you know, is it supported by some evidence that would allow reason to pursue the findings? Is that the way it goes? Yes, but I do believe the Civil Practice Act allows you to ask for specific findings and facts. I don't think it requires the judge to do that, but I often do that and have often gotten them. And certainly special interrogatories to juries are used quite a bit, and you've probably seen those on appeals. Maybe they are the cases that aren't appealed because they're more clearly ruled on and people decide not to appeal a ruling when the jury pronounces more or when the judge pronounces more. So that's two minutes. In summary, I think the state has abandoned their argument on the money laundering case because there is no argument on the money laundering case. I don't think of a denial of a finding for a directed verdict, and, you know, there's no jury in the forfeiture case, so it's really not a directed finding because he's just denying my motion to win at that point in time. But I think they've now asked you to rely on the money laundering forfeiture statute to come up with some reason why the judge can't consider my client's explanation of his guilty plea. But more than that, Judge, the guilty plea didn't cover all of the elements of the forfeiture. It didn't cover using his truck in the criminal act. And, again, I suggest to you the criminal conspiracy occurred when Campbell and Talmadge planned to steal the equipment, and when they steal the equipment, based on that conspiracy, somebody leaves the gate open unlocked, somebody leaves the cars in the truck, and I thought I heard counsel arguing, well, they didn't intend to steal anything except a skidster. Well, the skidster was parked on a vehicle with this paving machine behind it, so they had to start up the paving machine to get it off so they could get the skidster off, and I don't know how two guys that climb over a fence to get into place are going to drive off in a skidster and load it onto this Yukon pickup truck. So they had to steal the dump truck, and this was an expensive dump truck. The trailer was an expensive trailer. The paving machine was an expensive paving machine, and this cheap, cheap, cheap skidster. Well, I'm guessing paving machines are a lot harder to fence than skidsters. There was no testimony to that. I'm telling you that the only testimony was that the skidster is hard to fence because nobody wants them because you can't use them because you can't get them repaired. Counsel's time. You can finish. The truck, I mean, Mr. Lucas testified that all of the equipment stolen was over $60,000, and by the way, at the criminal trial, one of the things I thought I'd win on is they never broke it down to what the skidster testified. There was no evidence of the value of the skidster presented at that trial, and the state had already arrested, and the only testimony was the equipment that was stolen was $60,000. They focused on the theft from Lucas. That's what the conspiracy was. I want to ask a question with regard to this hearing and this record that we have, what we have, is you got two petitions to forfeit, right? Yes. Okay. In the one petition from the statute, you could use the claimant's testimony because that's not barred for that. Correct. So on that bare record, you've got evidence. You've got the evidence from the state, the evidence from the defendant, and you've got the judge making a ruling, denying it. He never said which one he was ruling on, so he denied the request. So then you've got the second petition, and so if you exclude that, then it's a question whether Campbell's believed or not, and whether or not, and your point earlier is whether or not, and I'm trying to understand what you're saying, is whether or not despite the guilty plea, whether or not the state, as to the satisfaction of the judge by the manifest way of the evidence, explained the utilization of the truck. Well, I think that's proved money laundering, too. And remember, no money changed hands. No money ever changed hands. By anybody's testimony, by the cop's testimony, by Campbell's testimony, no money ever changed hands. So I don't think a guilty plea to stealing a piece of equipment means that a person's committed money laundering. So I think they failed to prove their money laundering case. I think the judge just said, okay, we're going to have more evidence, you're going to be presenting something, so go ahead and present it. And I don't think both cases were consolidated for any purpose other than hearing them both at the same time and deciding them both at the same time. They were not a typical consolidated case. We heard the evidence on both cases at the same time. And the guilty plea was with regard to? The theft of a Skid, the conspiracy to buy a stolen vehicle, the Skidster. That's what he was charged with, that's what the elements of that crime were. It had nothing to do with money laundering. No allegations anywhere of money laundering. So there's no guilty plea on the money laundering? Absolutely none. Absolutely none. And I suggest there's no guilty plea that says, and I used my vehicle for it either. Thank you. Thank you. Mr. Gnidovic from Obama. With respect to your Honor's question, you asked who called Campbell. Campbell was called by claimant, not by the state. With respect to the state of the record, unfortunately the switch wasn't turned on. We have an agreed statement of facts, as much as we could possibly get. If the court takes note of the file, there were a couple of continuations by the state. It wasn't until I had instructed the prosecutor to file both an agreed statement of facts, as well as a bystander's report and call it up for a hearing, that we could finally get defense counsel and claimant's counsel in the court in an effort to try to come to some sort of settlement on the record. I think that we have as complete a record as we possibly can. And thirdly, I don't think that in order to forfeit a vehicle based on the commission of a crime, that the crime has to somehow, way, shape, or form, allege that the property being forfeited was allegedly used in the crime. I don't think the charge in Adams, that the claimant there had used his truck to go to this gas station and steal stuff, was in the charge. So I don't think that that's not necessarily required. All we have to take a show now is after the crime was committed, was some sort of property that was subject to forfeiture, was that used to facilitate the commission? Whether or not it's in the charge or not is irrelevant. Other than that, I have no other comments. Well, let me ask you a question. With respect to the review, when a trial judge rules on a motion to direct a verdict in a case like this, does he prohibit it from weighing the credibility? In other words, does he have to accept everything, every bit of the state's case on a motion to direct a verdict? Or can he say, look, motion to direct a verdict. Look over at the prosecutor and say, you know, you've drugged the biggest bunch of liars in here I've ever seen. Get them out of here motion granted. Because obviously they're all lying. I don't believe a word they said. Can you do that on a motion to direct a verdict? I would say not. Only and solely because according to the standard, you have to accept that the state's case, the most favorable to the party that has the burden of proof. In the case plaintiff or in a criminal case, you know, state. I don't think that they make any kind of, I think they just have to determine whether or not there's sufficient evidence there based on what is presented that would be able to. Well then, so next step. So the defense says, you know what? Since we don't have any evidence. Okay, neither motion to direct a verdict. We don't have any evidence. Credibility. Then he could turn around and still deny your petition and say, okay, I don't believe any of this. That would be true. I would say that that would be correct. But then in a civil case, unlike a criminal case obviously, in a civil case, we can question that ruling. We can question the fact that he found, the trial looked, hypothetically, trial judge can take and say, I don't believe any of your witnesses. State can take and appeal, but the state would take, or the opposing party, not the state, but the opposing party would take and say, we think that ruling is manifestly wrong because there's nothing there to take and there's no impeachment. Well, there can just be, I mean, the standard on a motion to direct a verdict is, has the state established all the elements of a prima facie case? Correct. But if the judge says, these people, these stories are incredible. I don't believe them, ergo, this evidence you're trying to get me to swallow that would establish your prima facie case, I don't believe it. I don't believe it now, I might believe it tomorrow, and I'm never going to believe it. So what provision prevents him from doing that on a motion to direct a verdict? Because I don't think... In a civil case. In a civil case, I don't think that the trial judge, I don't think, has that ability to take and assess credibility. Obviously, what you would do is, the question is, based on what was presented, I think what they almost have to do is they almost have to accept the testimony as presented. Was that testimony sufficient to establish a prima facie case? If believed. Yes? Motion denied. I agree, but if he says, I don't believe it, I know your witnesses said it, I don't believe them. I think that that comes in decision time. That is where... And what's the proof? What gets us to that point, I think? Because of the standard for a directed finding is whether or not the evidence that was presented is taken in the light most favorable to the non-moving party. Does that establish a prima facie case for the element? I don't think that allows for credibility determination. Interesting question. I'm sure we can talk about it later. Any other questions? No. Very good, thank you. Okay, and thank you all here today. The matter will be taken under advisement. Written disposition will be issued. Right now I'll be in a brief recess for a panel change for the rest of the case.